Brandt L. Wolkin, Esq. SBN 112220
Catharine M. Tolson, Esq. SBN 271223
WOLKIN · CURRAN, LLP
111 Maiden Lane, Sixth Floor
San Francisco, California 94108
Telephone:   (415) 982-9390
Facsimile:    (415) 982-4328
bwolkin@wolkincurran.com
ctolson@wolkincurran.com

Attorneys for plaintiff
GRANGE INSURANCE ASSOCIATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRANGE INSURANCE ASSOCIATION, a Washington corporation,<br><br>Plaintiffs,<br><br>v.<br><br>JED D'ABRAVANEL, an individual, YANYI D'ABRAVANEL, an individual, AND DOES 1-10,<br><br>Defendants. | Case No.<br><br>**GRANGE INSURANCE ASSOCIATION COMPLAINT FOR RESCISSION AND DECLARATORY RELIEF** |

COMES NOW, GRANGE INSURANCE ASSOCIATION ("Grange" and/or "Plaintiff"), and alleges as follows:

**PARTIES**

1. Plaintiff Grange is now, and at all times mentioned in the Complaint was, an insurance company organized and existing under the laws of the State of Washington with its principal place of business located at 200 Cedar Street, Seattle, Washington. Grange is licensed to do business in the State of California by the California Secretary of State and Department of Insurance.

///

2.  Grange is informed and believes, and thereon alleges, that defendants Jed and Yanyi D'Abravanel (hereinafter "Defendants") are individuals who reside and are domiciled in San Francisco, California.

**ACTION**

3.  This is an action for rescission and declaratory judgment brought under 28 U.S.C. §2201 and Rule 57 of the Federal Rules of Civil Procedure for the purpose of determining actual controversies among the parties as hereinafter more fully set forth.

**JURISDICTION**

4.  The controversy for which Grange requests a declaratory judgment involves parties who are subject to the diversity jurisdiction of this court and the amount in controversy exceeds the jurisdictional limitations set forth in 28 U.S.C. §1332.

**VENUE**

5.  Venue is proper in the Northern District of California in that the Defendants are subject to personal jurisdiction in this district at the time this action is commenced (28 U.S.C. §1391(c)) and a substantial part of the events or omissions giving rise to the claim occurred in this district.

**FACTUAL RECITALS AND INSURANCE POLICIES**

6.  Grange issued a policy of homeowners insurance to Defendants commencing at the time they purchased a rental property located at 27 Acacia Road, Fairfax, California (the "Property") in September 2020. Defendants purchased the Property with an existing tenant residing therein, Mark Griffin. Escrow closed on the sale of the Property on September 7, 2020. The Policy incepted on September 2, 2020.

**History of Habitability Issues at the Property**

7.  The Property's tenant, Mark Griffin, filed suit on March 12, 2021 in an action styled *Griffin v. D'Abravanel,* Marin County Superior Court, Case No. CIV2100821 (the "Griffin Action"). The below factual recitals are based on information contained in the Complaint filed in the Griffin Action, attached hereto as Exhibit A.

///

COMPLAINT FOR RESCISSION AND DECLARATORY RELIEF                           CASE NO.

8. Mr. Griffin allegedly moved into the Property in August 2019, when it was owned by Christopher and Claire Prio. After living at the Property for some months, Mr. Griffin alleges that he and his sons noticed some defective conditions. Chief among these defects were an alleged extensive rat infestation and a defective furnace. He alleges there was also a problem with rotting exterior stairs and railings. He alleges he provided notice to Mr. Piro, but no steps were taken to remediate.

**Pre-Purchase Inspections Conducted by Defendants**

9. Grange is informed and believes and based thereon alleges that, in late August 2020, Defendants performed housing inspections at the Property as a precursor to buying the Property. One of their inspectors is alleged to have informed Mr. Griffin that the furnace was cracked and leaking carbon monoxide. Mr. Griffin alleges this condition had no doubt been in existence throughout the tenancy, exposing Mr. Griffin and his boys to carbon monoxide gas poisoning. The inspector shut off the HVAC and instructed Mr. Griffin not to turn it on because it posed a health hazard.

10. Grange is informed, believes, and thereon alleges that Defendants do not dispute that an HVAC inspection took place on August 20, 2020 during which the inspector "found a crack in the heater that he suggested could potentially cause a carbon monoxide leak." (Attached hereto as Exhibit B is a true and correct copy of a written timeline drafted by Defendant(s) and submitted to Grange on March 18, 2021.)

11. Mr. Griffin alleges that, on August 24, 2020, Defendant(s) came to the Property and he again advised about the rodent infestation, lack of heat, and rotting stairs and railings that he had been trying to get Mr. Piro to fix since September 2019. Defendants have provided written information to Grange which confirms this meeting took place, and that Defendant(s) told Mr. Griffin that they were considering repairing the stairs and "possible foundation work upon purchase." (Exhibit B.) Mr. Griffin alleges during this conversation that Defendant(s) also admitted that the Property was at risk of sliding down the hill. Mr. Griffin alleges that he reiterated his request for immediate abatement of the rodent infestation and repair of the furnace but that Defendant(s) replied that they did not

intend to pay for repairs until such time as they would be moving into the Property themselves.

### Defendants Apply for Insurance With Grange Before Escrow Closes

12. In order to obtain insurance with Grange to insure the Property upon purchase, Defendants submitted a signed Application for Insurance on September 2, 2020 ("Application"). (Exhibit C.) One of the questions on the Application was "Does the dwelling have any of the following characteristics: cantilevered design, post or pillar construction, unrepaired damage, structural defects or built on fill or silt?" Defendants answered "no" to that question, despite awareness of rat infestation, broken heater with carbon monoxide issue, and failing stairs and railings that Grange is informed and believes and based thereon alleges that they had learned of during the pre-purchase inspections. They also answered "no" to whether the Property was built on a slope of 20 degrees or more. Based on the answers in the Application, Grange issued Dwelling Policy No. 5302220006342, effective September 2, 2020 through September 2, 2021 to Jed and Yanyi D'Abravanel (the "Policy", attached hereto as Exhibit D). One of the Conditions on the Policy includes "Concealment or Fraud," which provides:

> "K.  Concealment Or Fraud
>
> We do not provide **coverage** to an "insured" who, whether before or after a loss, has:
>
> 1.  Intentionally concealed or misrepresented any material fact or circumstance;
>
> 2. Engaged in fraudulent conduct; or
>
> 3. Made false statements;
>
> relating to this insurance."

13. Thereafter, Grange determined that the slope was in fact 30 degrees, despite the Application representing otherwise. Grange guidelines require the construction of a dwelling not be on a property with a slope of 30 degrees or more. Accordingly, Grange sent a Notice of Cancellation of Insurance on September 11, 2020, effective October 12, 2020. The Policy was therefore only in place for approximately a month. (Exhibit E.) On

4

COMPLAINT FOR RESCISSION AND DECLARATORY RELIEF                    CASE NO.

September 14, 2020 and September 23, 2020, Grange refunded Defendants $851.00 (Eight Hundred Fifty One Dollars) of the total $952 (Nine Hundred Fifty Two Dollars) premium paid for the Policy.  Grange only retained $101 (One Hundred and One Dollars) in premium to account for month that coverage was in place before cancellation.  Those checks were both cashed on September 29, 2020

14.    On September 7, 2020, the sale of the Property closed and Defendants became the new owners of the Property.

### Habitability Issues During the Month of Coverage

15.    Griffin alleges that, starting on September 13, 2020, Defendant(s) and Mr. Griffin communicated repeatedly about the rodent infestation and the furnace issue, and that Defendant(s) stated they were "looking into" it and would be having the Property evaluated for fire hazards.

16.    It is alleged that, on September 28, 2020, Mr. Griffin asked for an update and was allegedly advised that Defendant(s) had ordered a replacement furnace and were waiting for the company to schedule an installation date, and that rodent traps had been purchased.  Mr. Griffin protested these traps, stating they had not worked in the past and the infestation was too large for traps to fix.

17.    Mr. Griffin alleges he then took action to abate the rat infestation himself. He alleges that several extermination companies came to inspect and each stated the infestation was the worst they had ever seen.  Hundreds of rats were allegedly nesting in the insulation materials, walls, and HVAC ducts.  He alleges that he was advised that the air ducts needed to be sanitized for safety before the furnace could be turned back on. Each company also allegedly emphasized that this rat infestation constituted a major health hazard that should be remediated right away.  Mr. Griffin alleges that he communicated all of this information to Defendant(s), and that Defendant(s) apparently stated they preferred to wait to hear from their own contractor, who was scheduled for October 19, 2020.

18.    Grange is informed and believes and based thereon alleges that, on October 2, 2020, the new furnace was installed.  Mr. Griffin alleges he had been instructed by the

extermination companies he had contacted not to turn on the heat until the old ductwork had been sterilized. When he communicated this information to the company that installed the new furnace, they allegedly elected not to turn on the new furnace. Mr. Griffin was later allegedly informed by the health inspector from the Town of Fairfax that it was important that the heater was not turned on until the old ducts had been sterilized. Therefore, although there was a new furnace, Mr. Griffin and his family were still without heat.

19. Mr. Griffin alleges that, on October 4, 2020, Defendant(s) came to the Property to see whether there was rat excrement in the heater ducts. He alleges that Defendant(s) denied finding any, and Defendants have provided Grange with written information to confirm they did not find any excrement during their investigation that day.

20. Grange is informed and believes and based thereon alleges that on October 7, 2020, Defendant(s) scheduled an HVAC inspection, but Mr. Griffin alleges the chosen company had never performed any cleaning or sanitization work on heating ducts, and was not certified to do so. After the inspection, Mr. Griffin claims he was told Defendant(s) would not pay for sanitization of the heating ducts because their HVAC inspection had found no proof of excrement.

21. Grange is informed and believes and based thereon alleges that, during the time period after the Policy was cancelled on October 12, 2021, Defendants and Mr. Griffin continued a dialogue regarding Mr. Griffin's habitability claims. Mr. Griffin also claimed entitlement to rent abatement due to the habitability issues he claimed, which Defendants denied.

22. Grange is informed and believes and based thereon alleges that the County of Fairfax issued a Notice of Violation for the Property which noted the presence of rodents at the Property, which constituted a violation of the 2013 International Property Maintenance Code§ 309.1, and the Fairfax Municipal Code§ 1.1 2.045. The Notice advised the D'Abravanels that the defective conditions "must be addressed immediately, and we must receive a letter from the extermination company stating that the infestation has been eliminated."

23. Ultimately, Mr. Griffin alleges that he moved out of the Property on November 9, 2020, citing that the Property was uninhabitable.

24. Mr. Griffin filed the Griffin Action on March 12, 2021. (Exhibit A.) Defendants tendered their defense in the Griffin Action to Grange under the Policy. During its investigation into coverage, Grange had discussions with Defendant Jed D'Abravanel regarding facts known to him at the time the Application for insurance was submitted and obtained written documentation from him, including a timeline of events he drafted. (Exhibit B.) That timeline confirms the allegations in the Complaint that Defendants' pre-purchase inspections of the Property revealed rat infestation, a broken heater with carbon monoxide issue, and dilapidated stairs and railings needing repair. Accordingly, at the time the Application was submitted on September 2, 2020, wherein Defendants answered "no" as to whether there was any "unrepaired damage" at the Property, Grange is informed and believes and based thereon alleges that Defendants were in fact of aware of several items of unrepaired damage.

25. The Policy was issued in reliance upon the false information contained in the Application. Had Grange been made aware of the unrepaired damage, it would not have issued the Policy. Accordingly, the misrepresentations were material, and Grange is entitled to rescission *ab initio.*

26. Grange first determined the grounds for rescission during its investigation into coverage for the Griffin Action. Grange issued written correspondence to Defendants on May 13, 2021, providing notice of Grange's intent to rescind the Policy, and including a draft copy of this Complaint for Rescission and Declaratory Relief. (Exhibit F.) That notice also included that, in compliance with CA Civil Code § 1691(b), Grange enclosed a check in the amount of $101 (One Hundred and One Dollars) to refund the previously retained premium for the month that coverage was in place before cancellation. All premiums have now been refunded. Additionally, without conceding coverage or waiving any of its coverage defenses or right to rescission, Grange offered to provide a defense to Defendant in the Griffin Action until such time as the Court in this action issues an order of Rescission

and/or Declaratory Relief regarding the Duty to Defend. That offer included an offer for independent counsel pursuant to Civil Code section 2860 given the allegations of intentional conduct in the Griffin Action. Grange's communication was clear that it was not waiving its no-coverage position or any other coverage defenses or rescission rights, and that Grange reserved the right to seek reimbursement of all fees and costs expended in Defendants' defense in the Griffin Action upon a court determination of Rescission and/or Declaratory Relief regarding the duty to defend. (Exhibit F.)

## FIRST CAUSE OF ACTION

(Rescission of the Grange Policy)

27. Grange re-alleges, and incorporates by reference as though set forth in full, each and every allegation contained in Paragraphs 1 through 26 of the Complaint.

28. Grange is informed and believes, and therefore alleges, that on or about September 2, 2020, Defendants made material false representations in their Application for Insurance. Specifically, to the question "Does the dwelling have any of the following characteristics: cantilevered design, post or pillar construction, unrepaired damage, structural defects or built on fill or silt," Defendants answered "no." Grange is informed and believes and based thereon alleges that at that time, Defendants were aware of a rat infestation, broken heater with carbon monoxide issue, and failing stairs and railings that they learned of during the pre-purchase inspections.

28. The representations made by Defendants were in fact false.

29. At the time the representations were made, and at the time Grange issued the Policy, Grange did not know the representations made were false. Grange believed the representations to be true and reasonably relied on them. If Grange had known the true facts, it would not have issued the Policy to Defendants.

30. Grange will suffer substantial harm and injury if the 2020 Grange Policy is not rescinded. Defendant's misrepresentations as to the Property not having unrepaired damage caused the risk accepted by Grange to be greatly expanded beyond what it was willing to insure and deprived Grange of its bargain.

31. Grange provided notice of rescission both pursuant to this Summons and Complaint and by way of May 13, 2021 correspondence, which included an enclosed check for the remaining premiums. Thus, all consideration furnished by Defendants in exchange for the issuance of the Policy have been refunded.

32. As a result of issuing the Policy, Grange has incurred expenses in addition to those alleged above. Additional expenses include, without limitation, attorneys' fees and costs to file the instant action, and attorneys' fees and costs expended in defense of Jed D'Abravanel in the Griffin Action. Grange will continue to incur expenses in an amount unknown at this time. Grange prays leave of this court to amend this Complaint to insert the true amount of those expenses when they have been ascertained.

## SECOND CAUSE OF ACTION

(Declaratory Relief)

33. Grange re-alleges, and incorporates by reference as though set forth in full, each and every allegation contained in Paragraphs 1 through 32 of the Complaint.

34. Should Grange not be granted rescission as prayed for in the First Cause of Action, then Grange also seeks a declaration that it is not obligated to provide coverage to Defendants for the claims being made in the Griffin Action.

35. Regardless of whether the relief requested in the First Cause of Action is granted, Grange seeks a declaration that it is not obligated to provide coverage to Defendants for the claims being asserted in the Griffin Action.

36. An actual and present controversy now exists between Grange and others in that, for the reasons described above, Grange contends it is not obligated to provide coverage for the Griffin Action in light of Condition K. Concealment or Fraud on the Policy, which states that Grange does not provide coverage to an "insured" who, whether before or after a loss, has:

"1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance."

Grange is informed and believes, and thereon alleges, that Defendants misrepresented a material fact or circumstance relating to the condition of the Property when it applied for coverage from Grange. Grange is informed and believes, and based thereon alleges that Defendants dispute this contention and contends that Grange is obligated to provide coverage for the Griffin Action.

37. Grange desires a judicial determination and declaration of the parties' respective rights and duties under the Policy issued to Defendants. Specifically, Grange desires a judicial determination and declaration that it is not obligated to provide coverage to Defendants in connection with Griffin Action because Defendants have not complied with the Conditions of the Policy and/or Grange is entitled to rescission of the Policy.

38. Should the Court find that Grange is not entitled to rescission of the Policy, Grange seeks a declaration from this Court that there is no coverage for the Griffin Action because Defendants did not comply with Condition K. Concealment or Fraud in that they misrepresented the condition of the Property by failing to disclose known unrepaired damage in the Application for Insurance.

WHEREFORE, Grange prays for judgment as set forth below.

1. For rescission of the Policy *ab initio*;
2. For a declaration of all rights, duties and obligations of the parties under the Policy;
3. That a judgment be entered against Defendants determining that Grange has no obligation to provide coverage for the Griffin Action;
4. For reimbursement of reasonable attorneys' fees and other litigation expenses according to proof;
5. For costs of suit incurred herein;
6. For pre-judgment and post-judgment interest at the legal rate; and,
7. For such other further relief as this Court deems just and proper.

///

COMPLAINT FOR RESCISSION AND DECLARATORY RELIEF                    CASE NO.

Respectfully submitted,

Dated:    May 14, 2021                              WOLKIN CURRAN, LLP


                                                    */s/ Brandt L. Wolkin*

                                        By: _____
                                              Brandt L. Wolkin, Esq.
                                              Catharine M. Tolson, Esq.

                                              Counsel for plaintiff
                                              GRANGE INSURANCE
                                              ASSOCIATION